UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| KELLY McCARTHY-BEAM,<br><br>       Plaintiff<br><br>    v.<br><br>MICHAEL ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>       Defendant | Civil Action No. 1:09-CV-272<br><br><br><br>MOTION TO REVERSE |

**DRAFT**

made changes to section III

**I.    Introduction**

    **A.    Procedural history**

Plaintiff, Kelly McCarthy-Beam, was 23 years old on October 4, 2005, when she filed for a period of disability and disability insurance benefits. (R. 8, 97, 80-84). She was insured for disability benefits through September 30, 2003, and was 21 years old on that date. (R. 80, 98). Ms. McCarthy-Beam became disabled as of January 1, 2002 due to bipolar disorder, post-traumatic stress disorder (PTSD), major depressive disorder, anxiety disorder, borderline personality disorder, eating disorder and headaches/head trauma. (R. 10, 149-150).[1] In her adult disability report, it was noted that Ms. McCarthy-Beam's work limitations included the difficulty

---

[1] Plaintiff has also suffered from substance abuse problems, but they are not material to a finding of disability. (*See, e.g.,* R. 344 (reporting that Plaintiff cannot complete a workweek due to frequent periods of agitation and depression, and that "further consideration will not change this assessment")).

1

she has getting along with people due to her personality disorder, as well as her migraines and tiredness. (R. 102).

Plaintiff's claim was denied at the initial level on June 6, 2006 and on reconsideration on February 16, 2007. (R. 45-47, 51-53). On February 27, 2007, Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 8). ALJ Kleinfeld subsequently issued an unfavorable decision on June 23, 2009, following a May 7, 2009 hearing in which no medical expert testified. (R. 15-32, 5-14). The Appeals Council notified Plaintiff on October 7, 2009 that they had denied her request for review and that the ALJ's decision was the Commissioner's final decision in the case. (R. 1-3). Subsequently, Plaintiff, through counsel, sought judicial review by this Court and hereby submits her motion to reverse. 42 U.S.C. § 405(g).

  **B.**  **The ALJ's decision**

In her June 23, 2009 decision, Judge Kleinfeld found that Plaintiff's date last insured was September 30, 2003, and that she had not engaged in substantial gainful activity (SGA) in the time period between her alleged onset date and her date last insured. (R. 10). Although the ALJ determined that Plaintiff had performed limited work activity following her alleged onset date, she concluded that such activity did not rise to the level of SGA. *Id*.

The judge next found that, through her date last insured, Plaintiff's history of PTSD, major depressive disorder, IV drug abuse, occasional marijuana use, cystic acne, and hypoglycemia all constituted medically determinable impairments. (R. 10-11). She further found, however, that Ms. McCarthy-Beam alleged a number of impairments that were not medically determinable through the date last insured, including spinal stenosis, endometriosis, attention deficit disorder, attention deficit hyperactivity disorder, sleeping disorder, and bipolar disorder. (R. 11). Similarly, the ALJ found that several impairments diagnosed after Plaintiff's

2

date last insured, including borderline personality disorder, hepatitis C, and syncope, were not medically determinable as of the date last insured. *Id*.

Despite a finding that Plaintiff suffered from the aforementioned medically determinable impairments through her date last insured, the ALJ found that Ms. McCarthy-Beam did not have an impairment or combination thereof that significantly limited her ability to perform basic work-related activities for 12 consecutive months and, therefore, that she did not have an impairment or combination of impairments that was severe. *Id*. With respect to Plaintiff's mental impairments, the judge determined that Ms. McCarthy-Beam had no limitation in activities of daily living, mild limitations in social functioning and concentration, persistence or pace, and no episodes of decompensation. (R. 13). Accordingly, the ALJ concluded that Plaintiff was not under a disability from the alleged onset date through the date last insured. *Id*. As discussed in sections II and III of this motion the ALJ's findings are not supported by substantial evidence.

### C.     The medical opinions

In April 2006, state agency psychologist Dr. Farrell reported that Plaintiff was suffering from a number of medically determinable mental impairments, but further reported that there was insufficient evidence upon which to make a determination as to the severity of claimant's mental impairments for the period from January 1, 2002 (the alleged onset date) through September 30, 2003 (the date last insured). (R. 279). At the time Dr. Farrell completed his PRTF opinion, however, the medical record related to Plaintiff's mental impairments was very limited.[2] Thus, Dr. Farrell cited and discussed medical records relating to the period from August 2005 through

---

[2] At the time Dr. Farrell completed his PRTF evaluation, the record prior to Plaintiff's date last insured merely reflected that Plaintiff had been diagnosed with depression by Dr. Genereaux in July 2003, for which he prescribed Zoloft, and that she had complained to Dr. Dhaval of occasional depression in August 2003. (R. 193, 261-62).

January 2006, containing diagnoses and treatment that occurred after Ms. McCarthy-Beam's date last insured. *Id*.

On May 18, 2006, state agency psychiatrist Dr. Kleinman reported his agreement with Dr. Farrell's opinion, *i.e.*, there was insufficient evidence in the record at that time upon which to determine the severity of Ms. McCarthy-Beam's mental impairments. (R. 281). As with Dr. Farrell, however, Dr. Kleinman's opinion was rendered on the basis of the identical record which was limited with respect to the period prior to Plaintiff's date last insured.

On December 27, 2006, state agency psychiatrist Dr. Schwartzreich reviewed the then-current medical record, including additional evidence, and affirmed the prior "insufficient evidence" opinions of Dr. Farrell and Dr. Kleinman. (R. 326). As Dr. Schwartzreich specifically noted, the new evidence "does not address the previous insufficient evidence issues." *Id*. The new evidence to which Dr. Schwartzreich referred were treatment records from 2006 and, therefore, did not address Plaintiff's mental impairments prior to the date last insured. (*See generally* R. 283-325).

Dr. Schwartzreich completed a subsequent PRTF on February 14, 2007 (R. 328-40). Dr. Schwartzreich reiterated his opinion that there was insufficient evidence upon which to assess the severity of Plaintiff's mental impairments prior to the date last insured. (R. 340). At the same time, however, he reported that Ms. McCarthy-Beam's mental impairments currently were severe from the time of her SSI application date (October 4, 2005). (R. 328, 340, 342). In his mental RFC assessment, Dr. Schwartzreich reported that claimant's ability to complete a normal workday was markedly limited due to ADHD, bipolar disorder, PTSD, "significant and debilitating depression," and phobic withdrawal. (R. 344) (emphasis added). As noted, the ALJ found that both PTSD and major depressive disorder were medically determinable prior to

4

Plaintiff's date last insured.  With respect to Plaintiff's abilities to concentrate and persist, Dr. Schwartzreich stated that her "periods of agitation[ ]and depression have been severe in the rating period [October 4, 2005 through February 14, 2007], and frequent enough[] to pre[v]ent [claimant] from sustaining a workweek."  *Id*.  Dr. Schwartzreich reported that his mental RFC assessment "is witho[u]t DAA; further consideration of DAA will not change this assessment."  *Id*.  On February 16, 2007, based on Dr. Schwartzreich's medical opinion, claimant was subsequently granted SSI benefits effective October 4, 2005.  (R. 19).[3]

### D. The additional evidence concerning Plaintiff's mental impairments prior to her date last insured

Subsequent to Dr. Schwartzreich's completion of the mental RFC assessment which led to the finding of disability for SSI purposes, additional medical evidence that was relevant to the period prior to the date last insured was added to the record.  (*See generally* R. 346-85).  Although the ALJ reviewed this additional evidence prior to rendering her non-severity finding, no psychologist or psychiatrist reviewed the evidence or rendered an opinion based upon it as to the severity of Plaintiff's mental impairments prior to the date last insured.

The new evidence establishes the existence of Plaintiff's PTSD and major depressive disorder well before her date last insured.  For example, the evidence reflects that Plaintiff experienced numerous traumatic childhood experiences including extreme physical, emotional and sexual abuse, involving, *inter alia*, two occurrences of rape when she was 10 years old.  (R. 348, 354).  In her decision, the ALJ made no reference to such extreme instances of abuse. Beginning in November, 1998, the record reflects that Plaintiff was involved in individual

---

[3] The record related to Plaintiff's award of SSI benefits does not appear in the record related to her current claim.  However, Dr. Schwartzreich indicated that his mental RFC assessment was specifically made for purposes of Plaintiff's SSI application, (R. 340), and the ALJ acknowledged the SSI award at Plaintiff's May 7, 2009 hearing regarding the current claim.

psychotherapy that continued into January, 2000.  (R. 360-82).

In July 2000, long before Plaintiff's date last insured, Ms. McCarthy-Beam's treating psychiatrist, Dr. Napier, noted Plaintiff's history of extreme abuse and diagnosed her with PTSD and major depression. (R. 347).   Dr. Napier also noted Plaintiff's symptoms of anxiety and insomnia at that time. *Id.*  In addition, the psychiatrist prescribed several psychotropic medications to deal with the mental impairments and also conducted further psychotherapy sessions with Ms. McCarthy-Beam. (R. 347, 357-358).   Moreover, Dr. Napier assessed Plaintiff's Global Assessment of Functioning (GAF) at 40 both in July 2000 and for the "past 6 months."  (R. 356).[4]  The psychiatrist stated that Ms. McCarthy-Beam had experienced a "severe" history of physical abuse at the hands of her father and grandmother and was also a victim of childhood rape while in foster care.  (R. 353, 356).  Dr. Napier reported that Plaintiff complained of an irritable or depressed mood "nearly every day for as long as she can remember."  (R. 353).  He further stated that Plaintiff met the "full criteria" for both PTSD and major depressive disorder in 2000.  (R. 356).

The record establishes that Plaintiff underwent further psychotherapy in 2003.  (R. 383-85).  The August 28, 2003 treatment note reflects that Plaintiff suffered from "constant anxiety and panic attacks."  (R. 385).

II.     **The ALJ violated the requirements of Social Security Ruling 83-20.**

It is a matter of record that Ms. McCarthy-Beam has been found disabled for SSI purposes since at least October, 2005.  In her June 23, 2009, decision, however, the ALJ did not

---

[4] GAF scores in the 31-40 range reflect "<u>major impairment</u>" in several areas such as "work or school, family relationships, judgment, thinking or mood." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th ed, Text Rev. (DSM-IV-TR), at 32.  (Emphasis added).

6

mention that Plaintiff had earlier been found disabled. Nor, in light of her Step 2 non-severity finding, did she separately determine a disability onset date. Accordingly, the only disability onset date of record is October 4, 2005, rendered on the basis of Dr. Schwartzreich's February 14, 2007 mental RFC opinion. The October 4, 2005 date, however, merely reflects the date Plaintiff applied for SSI benefits. It bears no relationship to the actual time when Plaintiff was unable to engage in substantial gainful activity due to her mental impairments. Moreover, Dr. Schwartzreich's mental RFC opinion was based on a materially incomplete medical record; he had no opportunity to review the additional evidence, discussed above, that was relevant to the severity of Plaintiff's PTSD and major depressive disorder as well as whether the onset of her disability actually occurred prior to the date last insured. Indeed, he specifically reported that the evidence available to him at that time was insufficient to determine the severity of Plaintiff's mental impairments–and consequently, the onset of disability–prior to her date last insured. Under such circumstances, Dr. Schwartzreich's opinion cannot constitute conclusive evidence as to Plaintiff's actual onset of disability. *Cf.* Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007); Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); *see also* Plumley v. Astrue, Docket No. 09-CV-42 at 14 (D. Vt.) (citing Spellman v. Shalala, 1 F.3d 357, 363 (5th Cir. 1993) for the proposition that lack of evidence alone is not sufficient to support a finding that an impairment did not exist at a disabling level of severity).

     Social Security Ruling 83-20, which is binding on an ALJ, sets forth the means by which an onset date must be determined. The Ruling provides that:

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20 (emphasis added).  Moreover, "[a] claimant need not prove that he was disabled prior to his date last insured to <u>trigger</u> application of SSR 83-20; rather SSR 83-20 exists to aid in determining whether a claimant was disabled <u>during</u> that remote time period."  Godsey v. Astrue, Docket No. 08-410-P-S at 4 (D.Me. June 29, 2009).  (Emphasis in original).  Indeed, the circumstances of the present case, where Plaintiff has been found disabled in a separate SSI application and alleges an earlier onset date of disability in the instant claim, present "the classic predicate for the triggering of the duty to apply SSR 83-20."  *Id*.  (citing <u>Beasich v. Commissioner of Soc. Sec.</u>, 66 Fed. Appx. 419, 432 (3rd Cir. 2003)).

As explained below, in the circumstances of this case, where the onset date is ambiguous and must be inferred, the ALJ committed reversible error by (i) failing to infer an onset date <u>before</u> determining the severity of Plaintiff's PTSD and major depressive disorder prior to the date last insured, and (ii) failing to call on the services of a medical advisor rather than relying on her own lay analysis of the evidence in inferring Plaintiff's onset date.  <u>Plumley</u>, Docket No. 09-CV-42 at 29 (D. Vt. Feb. 8, 2010).

This Court's recent decision in <u>Plumley</u>, which is factually very similar to the instant case, is controlling and requires remand of the ALJ's decision.  In <u>Plumley</u>, the claimant sought disability benefits due to psychological problems, including PTSD and depression.  *Id*. at 2.  The claimant was found to be disabled for purposes of SSI due to her inability to complete a normal workday/workweek.[5]  *Id*.  Her subsequent application for adult child disability insurance benefits (DIB) in which she alleged an onset date prior to the SSI disability date was denied.  *Id*. at 3.  At hearing, the ALJ terminated the claim at Step 2, finding that the claimant's medically

---

[5] In the present case, Dr. Schwartzreich, stated that Ms. McCarthy-Beam's "periods of agitation and depression have been severe in the rating period [October 4, 2005 through February 14, 2007], and frequent enough to prevent claimant from sustaining a workweek." (R. 344)

determinable mental impairments were not severe prior to her 22nd birthday. *Id*. at 5. He further found that the claimant's statements concerning her symptoms prior to her 22nd birthday were not credible. *Id*. The ALJ determined that, in the relevant period, the claimant's mental impairments caused no more than mild limitation in activities of daily living, social functioning and concentration, persistence or pace, and no periods of decompensation. *Id*. at 6.

In analyzing the requirements of SSR 83-20, this Court held that "the ALJ's failure to call a medical advisor to assist in inferring [the claimant's] disability onset date requires remand." *Id*. at 9-10. The holding was based on this Court's conclusion that the evidence regarding onset date was ambiguous. *Id*. at 10. Under such circumstances, the Court stated that the ruling requires the ALJ to determine an onset date in cases where, as in the present case, the claimant has been found disabled under another title of the Social Security Act for the period post-dating the claimant's DIB eligibility date. *Id*.

In Plumley, this Court found that the ALJ had erroneously failed to infer an onset date. *Id*. at 12. Moreover, although the Court acknowledged that such an error would be harmless if the ALJ had nevertheless implicitly followed the dictates of SSR 83-20, the Court found that the ALJ's failure to infer an onset date was not harmless in that case. *Id*. at 13. In reaching that conclusion, the Court noted that SSR 83-20 imposes "what might fairly be called heightened record-development duties." *Id*. at 15 (citing Godsey, Docket No. 08-410-P-S at 5). In addition, the Court noted that SSR 83-20 states that the ALJ should call on the services of a medical advisor when, as in Ms. McCarthy-Beam's case, the onset date must be inferred. *Id*. at 16 (citation omitted). The Court stated that the requirement to use a medical advisor in such circumstances "is merely a variation on the most pervasive theme in administrative law - that substantial evidence support an agency's decisions." *Id*. (quoting Bailey v. Chater, 68 F.3d 79,

9

80 (4th Cir. 1995)). Moreover, use of a medical advisor is essential when the record is ambiguous regarding onset date. *Id*. (Citations omitted).

This Court noted that mental illnesses such as PTSD are "unstable" and may not manifest themselves "until well after the stressful event which caused it, and may wax and wane after manifestation." *Id*. at 19 (quoting Jones v. Chater, 65 F.3d 102, 103 (8th Cir. 1995)) (emphasis added). Thus, mental impairments such as PTSD "often go untreated for long periods of time." *Id*. (Citation omitted). In Plumley the Court concluded that the evidence was ambiguous with respect to the claimant's onset date and, as such, that the ALJ was required to use a medical advisor, rather than relying on his own lay analysis of the evidence, in inferring the onset date. *Id*. at 28-29. It is also significant that this Court, in remanding the case, specifically instructed the ALJ to infer an onset date with the assistance of a medical advisor "before determining the severity" of the claimant's mental impairment. *Id*. at 29 (emphasis added).

The circumstances of the present case militate strongly in favor of the same result that this Court reached in Plumley. Here, the ALJ failed to infer an onset date of disability using the services of a medical advisor before attempting to assess the severity of Plaintiff's PTSD and major depressive disorder. The evidence in the present case regarding the onset of Plaintiff's disability is ambiguous. However, the evidence prior to her date last insured, though limited, clearly establishes that the PTSD and major depressive disorder resulting from her extreme childhood physical and sexual abuse existed at that time and, moreover, were among the mental impairments that were subsequently deemed disabling. In addition, the effective date of Plaintiff's disability for SSI purposes relates to her SSI application date rather than the date when her mental impairments actually prevented her from working. Moreover, Plaintiff's testimony, as well as the other lay and medical evidence, is consistent with her statement that she was

disabled prior to her date last insured.[6]  Generally, the ruling dictates that the ALJ adopt the date the claimant stated she became disabled, unless contradicted by the medical evidence.

### III. The ALJ's finding that Plaintiff's mental impairments were not severe through the date last insured is seriously flawed.

The ALJ erred in two broad areas in making her determination that the Plaintiff's mental impairments were not severe through the date last insured: (a) her assessment of the medical evidence, and (b) her assessment of the Plaintiff's credibility.

Even assuming, *arguendo*, that the ALJ did not commit reversible error by failing to infer a disability onset date before using a medical expert to assess the severity of Ms. McCarthy-Beam's mental impairments, the ALJ's Step 2 finding is, nevertheless, seriously flawed and unsupported by substantial evidence.  The Step 2 process exists, essentially, merely to weed out frivolous cases and is designed only to create a minimal barrier for disability claimants.  Courts, including the Second Circuit, have warned that in assessing the severity of an impairment or combination of impairments, the Step 2 analysis may not do more than screen out *de minimis* claims.  *See,e.g.,* Dixon v. Shalala, 54 F.3d 1019, 1030 (2nd Cir. 1995); McDonald v. Secretary of Health and Human Servs.**,** 795 F.2d 1118, 1122 (1st Cir. 1986); Bailey v. Sullivan, 885 F.2d 52, 56-57 (3rd Cir. 1989); Pickering v. Chater, F.Supp. 418, 424 (S.D.N.Y. 1996).  Where a claim rises above the *de minimis* level, as here, further analysis at Step 3 and beyond must be undertaken.  Dixon, 54 F.3d at 1030.

The Social Security Rulings (SSR) also caution against prematurely terminating a claim

---

[6] For example, Ms. McCarthy-Beam's testimony, her disability report statement, and psychotherapy treatment records reflect the debilitating effects of her mental impairments prior to the date last insured, including her inability to deal with the demands of even non-SGA employment.  Moreover,  the GAF assessments of her level of functioning that were made by her treating psychiatrists were essentially the same in 2000–well before the date last insured–and 2005, when she was found to be disabled.

11

at Step 2.  The Rulings advise that an ALJ should exercise:

> [g]reat care … in applying the not severe impairment concept. If an adjudicator is unable to determine <u>clearly</u> the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential process should not end with the not severe evaluation step.  <u>Rather, it should be continued.</u>

SSR 85-28 (emphasis added).  In other words, a finding of not severe should be made only if the medical evidence establishes merely a "slight abnormality" which would have "no more than a minimal effect on an individual's ability to work."  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987); *see also* 20 C.F.R. § 404.1520(c); SSR 86-8.

      A.      **The ALJ improperly assessed the medical evidence.**

In this case, Ms. McCarthy-Beam was found disabled for SSI purposes effective October, 2005 based on the severity of her mental impairments, including PTSD and major depressive disorder.  The medical record established that Plaintiff's PTSD and major depressive disorder pre-existed her date last insured.  Additional evidence concerning the severity of her mental impairments prior to the date last insured was not reviewed or considered by the medical experts, and those same experts, based on the records they did review, reported there was insufficient evidence to make a Step 2 determination.  On these facts, the ALJ's finding that Plaintiff's PTSD and major depressive disorder were non-severe is without substantial support.

The fundamental problem with the ALJ's Step 2 non-severity finding is that she reached her conclusion based solely on her lay interpretation of the raw medical data, including evidence that was submitted <u>after</u> the record was assessed by the state agency medical experts and which concerned the severity of Plaintiff's mental impairments prior to her date last insured.  *See, e.g.,* <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2nd Cir. 1998); <u>Stanwood v. Bowen</u>, 643 F.Supp. 990, 991 (D.Me. 1986) ("Medical factors alone may be used only to screen out applicants 'whose

impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment.") (quoting McDonald , 795 F.2d at 1122).  At the same time, the ALJ impermissibly ignored or misconstrued the medical evidence that established that Plaintiff's mental impairments were severe prior to the date last insured.  *See* Pietruni v. Director, Office of Worker's Compensation Programs, 119 F.3d. 1035, 1042 (2nd Cir. 1997) (noting that the Commissioner may not rely on an ALJ's lay opinion to contradict a medical source's opinion); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (holding that an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion").

The ALJ committed reversible error by also rejecting the expert opinions of several state agency psychologists and psychiatrists who found that there was insufficient evidence upon which to determine the severity of Plaintiff's mental impairments prior to her date last insured. The ALJ failed to obtain medical expert testimony at hearing, re-contact the state agency psychologists who had rendered "insufficient evidence" PRTF opinions prior to submission of the additional evidence, or otherwise obtain a post-hearing psychological assessment based on the newly submitted evidence.[7]  The non-physician ALJ could not properly determine that the prior "insufficient evidence" opinions rendered by Dr. Farrell, Dr. Kleinman and Dr. Schwartzreich would not have changed in light of the new evidence.

All of the state agency psychologists and psychiatrists who reviewed the medical record prior to Plaintiff's timely submission of additional evidence determined that a Step 2 finding could not be rendered as to the severity on the mental impairments through the date last inured. Specifically, "insufficient evidence" opinions were rendered by Dr. Farrell (April 2006), Dr.

---

[7] Notably, it is not disputed that the newly submitted evidence was timely filed prior to Plaintiff's May 7, 2009 hearing.

Kleinman (May 2006), and Dr. Schwartzreich (December 2006 and February 2007). The ALJ stated that she gave "limited weight to the opinion of the state agency medical expert who concluded that there was insufficient evidence to make findings regarding the claimant's psychological limitations." (R. 12 (citing Dr. Swartzreich's February 14, 2007 PRTF evaluation)). The ALJ gave no explanation for her determination regarding Dr. Schwartzreich's conclusion, and did not address the fact that it was entirely consistent with his December 2006 opinion, as well as the earlier opinions of Dr. Kleinman and Dr. Farrell.

Here, the record, including the additional evidence unreviewed by the experts, reflected not only that Plaintiff was the victim of extreme childhood abuse, but that she was undergoing psychotherapy from 1998 - 2000 through her school. The latter fact is important because it reflects that Plaintiff's mental impairments even limited her functioning as a student.[8] The ALJ simply ignored that evidence. The evidence also established that, in 2000, Plaintiff was receiving additional psychotherapy, as well as treatment with psychotropic medications, with Dr. Napier, her treating psychiatrist. Notably, Dr. Napier specifically attributed Plaintiff's PTSD and major depression impairments to the extreme physical and emotional abuse she had suffered as a child. He also assessed her GAF at 40, reflecting serious problems.

Dr. Napier's GAF assessment is significant for two reasons. First, it constitutes further evidence that Plaintiff's PTSD and major depression impairments were severe prior to the date last insured. Second, Plaintiff's GAF was also assessed at 40 by treating psychiatrist, Dr. West in October 2005, at which time Ms. McCarthy was deemed disabled for SSI purposes. (R. 211). Thus, the evidence reflects the continuity of Plaintiff's severe mental impairments both prior to and following her date last insured.

---

[8] Plaintiff left school following the 10th grade. (R. 107).

### B.     The ALJ improperly assessed the Plaintiff's credibility.

The ALJ committed further error in finding that Plaintiff's lay testimony and other evidence concerning the period prior to her date last insured was not credible. For example, the ALJ stated that she did not find Plaintiff's disability report fully credible, "especially as it pertains to the period before the date last insured, approximately three years before the report was completed." (R. 13). As the ALJ noted, the report provides that Plaintiff "did not like being around others, and had difficulty concentrating or remembering items." (R. 13, 101-08).[9] There is nothing in the record, however, to suggest that the information provided in the report is in any way inaccurate. The ALJ does not suggest, and indeed she cannot, that lay testimony is not material to a Step 2 severity determination. *See* Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998) (holding that lay observations must be treated as evidence and citing 20 C.F.R. § 416.929(c)(3)); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Dwyer v. Apfel, 23 F.Supp.2d 223, 230 (N.D.N.Y. 1998).

As noted, Plaintiff's treating psychiatrist reported that Plaintiff had a GAF score of 40 in 2000. Plaintiff's treating therapist also noted 3 years later in 2003 that Ms. McCarthy-Beam was suffering "constant anxiety and panic attacks." (R. 385). Plaintiff's testimony, moreover, directly supports the severity of her symptoms prior to the date last insured and the information contained in the disability report. For example, after dropping out of school, she attempted to obtain a GED but "ended up quitting" because "I can't be around people and it was just too much for me." (R. 21) (emphasis added). Plaintiff also testified that around 2000 she "started having dreams and nightmares about things that I had forgotten about that happened to me when I was

---

[9] The disability report appears to have been completed by Plaintiff's mother, Diane Pawlick.

15

younger. It got to the point where I couldn't sleep at all." (R. 24). She further stated that medication was not helpful. (R. 25). With respect to her problems being around people at that time, she stated that:

> if it got to be too many people I'd start having panic attacks and anxiety attacks and feel like the world was closing in on me. I have paranoia, thinking that people are going to hurt me. *Id*.

Although Plaintiff was working "off and on," (R.26), during the period prior to her date last insured, the work activity was not at SGA level. (*See, e.g.,* R. 94). Plaintiff's mental heath symptoms, moreover, resulted in work-related difficulties. She testified that the work "got to be too much for me" and so her employer moved her to the night shift. (R. 26). However, after repeated terminations (both voluntary and involuntary) she ended up leaving for good due to her anxiety. *Id*.

The ALJ provided no rational basis for rejecting the lay and medical evidence that established that Plaintiff's PTSD and major depressive disorders constituted severe impairments under the applicable regulation. 20 C.F.R. §404.1521. Moreover, at Step 2, Plaintiff's de minimis burden does not require that she establish that her impairments were disabling, per se. Rather, she is required merely to establish that, prior to the date last insured, her PTSD and major depression disorder caused more than a "slight abnormality" which would have "more than a minimal effect on an individual's ability to work." Bowen, 482 U.S. at 154 n. 12. On the current record, Plaintiff has satisfied that burden. Accordingly, the June 23, 2009, decision must be vacated and the case remanded.

## IV.   Conclusion

For all of the foregoing reasons, the Plaintiff respectfully requests that the Court vacate Judge Kleinfeld's June 23, 2009, decision and remand the claim for a new hearing.

DATED: August 16, 2010

                                          /s/Francis M. Jackson
Francis M. Jackson, Me. Bar No. 00045
Attorney for the Plaintiff

JACKSON & MacNICHOL
238 Western Avenue
South Portland, ME 04106
(207) 772-9000
mail@jackson-macnichol.com

CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2010, I electronically filed Plaintiff's Itemized Statement of Errors and fact sheet with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following attorney(s):

    Heather Ross, Esq.
    Assistant U.S. Attorney
    P.O. Box 570
    Burlington, VT 05402
    (802) 951-6725
    heather.ross@usdoj.gov

    /s/Francis M. Jackson
    Francis M. Jackson, Me. Bar No. 00045

JACKSON & MacNICHOL
238 Western Avenue
South Portland, ME 04106
(207) 772-9000
mail@jackson-macnichol.com